UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MARVIN GARDNER,<br>    Plaintiff,<br><br>v.<br><br>ASST. WARDEN PULLEY, LOIS<br>LINDORFF, KUL B. SOOD, S. NELSON,<br>and SHAR G. FATEILGIEN,<br>    Defendants. | Case No.: 13-1384 |

ORDER ON MOTIONS
FOR SUMMARY JUDGMENT

    The Defendant's have filed Motions for Summary Judgment. They argue lack of deliberate indifference, lack of personal involvement, and qualified immunity. The Motions are granted, as to deliberate indifference and/or lack of personal involvement, for the reasons set forth below. As such, the issue of qualified immunity need not be addressed.

BACKGROUND

    Plaintiff, Marvin Gardner, is an inmate with the Illinois Department of Corrections, who was incarcerated at Hill Correctional Center at the time relevant to this action.

    Plaintiff asserts a violation of his Eighth Amendment Rights. Specifically, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical condition. Plaintiff claims that he did not receive proper treatment when he injured his left thumb deflecting a soccer ball at Hill on August 7, 2012.

    Defendant Pulley is the Assistant Warden of Programs at Hill. Defendant Lindorff was the Health Care Unit Administrator. Dr. Sood was the Medical Director, while Shawn Nelson was a radiology technician who took an x-ray of Plaintiff's thumb, and Shar Fateilgien was a nurse.

    Defendants Pulley and Lindorff argue that they were not personally involved in Plaintiff's medical care and, therefore, cannot be held liable. Defendants Sood and Nelson assert that Plaintiff did receive proper medical treatment and that they were not indifferent to any serious medical condition. It does not appear that Defendant Fateilgien was ever properly identified or served in this matter, and she is therefore dismissed.

    Plaintiff was seen in the health care unit on August 7, 2012, after injuring his thumb. Dr. Sood examined his thumb, prescribed medication for pain and to reduce the swelling, and ordered an x-ray of Plaintiff's thumb to check for dislocation. His thumb was x-rayed on August

9, 2012. The x-ray report by Dr. Cordova found only degenerative changes and indicated no fracture, acute bony abnormality, or dislocation. Dr. Sood reviewed the x-ray report, ruled out a dislocation, and determined that Plaintiff likely had long-standing conditions with his thumb that predated the soccer injury. His thumb was wrapped with tape and a stick, but he was told that in Dr. Sood's medical judgment, the thumb should not be manipulated, and there was nothing more to be done. He saw Dr. Sood again on September 12, 2012, because his thumb was still bothering him. Dr. Sood observed that Plaintiff's thumb had improved and range of motion was restored. Another x-ray was ordered for September 13, 2012 for purposes of comparison. The x-ray report again noted significant osteoarthritis but no significant change, bony erosive change, or acute bony fracture. Dr. Sood reviewed the x-rays again, reiterated that his opinion had not changed from his prior assessment, and prescribed more pain medication. Plaintiff asked Dr. Sood to refer him to another hospital, but that didn't happen.

On September 30, 2012, Plaintiff was seen by a nurse for sick call, but her notes indicate that Plaintiff refused to let her examine his thumb at that time. Plaintiff saw Dr. Sood again on October 9, 2012, reporting that while he still had some pain, his thumb was much better. Dr. Sood examined his thumb and observed full range of motion with abduction. Dr. Sood gave Plaintiff the option of discontinuing his lawn mowing job at the institution, but Plaintiff said he was okay to continue it. Plaintiff had no further contact with Dr. Sood.
.
On October 12, 2012, Plaintiff filed a grievance requesting to be seen by a bone specialist, to which Defendant Lindorff responded on October 16, 2012. Plaintiff filed this action on August 27, 2013. Defendants have now moved for summary judgment. Plaintiff failed to respond to either motion, thereby admitting the factual assertions contained therein, and this Order follows.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the evidence, however, is "merely colorable, or is not significantly probative or merely raises 'some metaphysical doubt as the material facts,' summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. Overall, "[s]ummary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Durkin v. Equifax Check Services*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003)). Summary judgment is mandated when, after adequate time for discovery, the party who bears the burden of proof fails to make a showing sufficient to establish an essential element of that party's case. *Celotex*, 477 U.S. at 323.

Thus, in order to overcome the undisputed facts set forth in defendants' motion for summary judgment, plaintiff cannot rest on the allegations in his complaint but must point to affidavits, depositions or other evidence of an admissible sort that a genuine dispute of material fact exists between parties. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

**Deliberate Indifference Standard**

The Eighth Amendment's proscription against cruel and unusual punishment imposes upon prison officials the duty to provide adequate medical care to incarcerated individuals. *Boyce v. Moore* 314 F.3d 884, 888-889 (7th Cir. 2002). In order to prove a violation of the Eighth Amendment, a plaintiff must establish: (1) an objectively, serious medical condition; and (2) deliberate indifference by the prison officials to that condition. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006) (citing *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000)); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A serious medical need is one that ". . . has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Indications that a prisoner has a serious medical need arise with, "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activity; or the existence of chronic and substantial pain." *Gutierrez*, 111 F.3d at 1373. "Mere negligence or even gross negligence does not constitute deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

"The deliberate indifference standard is a subjective one." *Estate of Novack v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). "To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (*Farmer*, 511 U.S. at 834). To be deliberately indifferent, a defendant "must know the serious risk to the prisoner's health, *i.e.*, the serious medical need at issue, and they must also consciously disregard that risk/need so as to inflict cruel and unusual punishment upon the prisoner." *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). Courts must "examine the totality of the inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs." *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999) (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1369 (7th Cir. 1997)).

The mere failure of prison official to choose the best course of action does not amount to a constitutional violation. *Peate v. McCann*, 294 F. 3d 879, 882 (7th Cir. 2002). A doctor's mistaken belief that his treatment will succeed vitiates any possibility of deliberate indifference, and a difference of opinion between physicians is insufficient to create an issue of fact as to deliberate indifference. *Norfleet v. Webster*, 439 F. 3d 392, 396 (7th Cir. 2006).

### I. Dr. Sood

Dr. Sood is a licensed physician and has served as the medical director at various correctional centers within the State of Illinois since 1990.

Dr. Sood examined Plaintiff twice shortly after his alleged injury. Both times, Dr. Sood ordered x-rays and pain medication. After reviewing the radiologists' reports from the x-rays showing no fracture, dislocation, or bony abnormality, Dr. Sood determined that Plaintiff had suffered from degenerative changes for quite some time prior to deflecting the soccer ball in the yard on August 7, 2012. In his medical judgment, he determined no further treatment was necessary for his arthritis given that full range of motion was restored and that referral to a bone specialist or hand surgeon was not medically indicated.

The facts, even when construed in the light most favorable to Plaintiff, indicate that Dr. Sood was not deliberately indifferent to plaintiff's medical needs and that his medical needs did not rise to the level of seriousness necessary to support a claim. Given the results of the x-rays, there is nothing in the record to indicate that Dr. Sood's treatment was blatantly inappropriate or equivalent to criminal recklessness. Dr. Sood promptly addressed Plaintiff's complaints by examining him, providing medication, and scheduling him for x-rays to rule out fracture or dislocation. Plaintiff simply disagrees with the treatment provided, which is not actionable under 42 U.S.C. §1983, and fails to state a claim for deliberate indifference as a matter of law. *See Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008) (holding that the Constitution is not a medical code that mandates specific medical treatment); *Gutierrez v. Peters*, 541 F.3d 688, 698 (7th Cir. 2008); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

### II. Defendant Nelson

Defendant Nelson's only involvement in this action was to be the radiology tech that took Plaintiff's first x-ray on August 9, 2012. He had no involvement in either the evaluation or interpretation of the x-rays or in Plaintiff's medical treatment.

On this record, there is no genuine issue of fact that would make this amount to deliberate indifference. Plaintiff has failed to demonstrate that Defendant Nelson acted with a sufficiently culpable state of mind or consciously disregarded a serious risk of harm. Summary judgment is therefore granted in favor of Defendant Nelson.

### III. Defendant Pulley

Plaintiff claims that Defendant Pulley was deliberately indifferent because as Assistant Warden of Programs, she was over the health care unit, and the decision to deny him a referral to a bone specialist would have been made by all of them together. However, there is no respondeat superior liability under § 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir.

2001). These allegations fail to demonstrate that Defendant Pulley was personally involved in Plaintiff's medical treatment.

Moreover, if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that this prisoner is in capable hands. *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005); *Johnson v. Doughty*, 433 F.3d 1001, 1010-12 (7th Cir. 2006). It was reasonable for Defendant Pulley to believe that the medical staff were responding properly to Plaintiff's complaints. Plaintiff has not shown that he suffered from any serious medical need, much less that Defendant Pulley had an adequately culpable state of mind to be deliberately indifferent to any such need. Defendant Simmons is granted summary judgment.

### IV. Defendant Lindorff

Plaintiff claims that because Defendant Lindorff returned his grievance as a non-emergency, she was deliberately indifferent to his serious medical condition. This grievance was the only interaction alleged to have involved Defendant Lindorff, other than the general claim that as the administrator over the health services unit, the decision to deny him a referral to a bone specialist would have been made by all of them. Again, Lindorff cannot be held liable on a theory of respondeat superior under *Sanville*.

Plaintiff has put forward no evidence which shows that Defendant Lindorff was personally involved or aware of Plaintiff's medical complaints/treatment or that she deliberately ignored those claims for the purpose of causing him harm or pain. She reviewed Plaintiff's complaints, saw that he was being treated by Dr. Sood, and reasonably relied on Dr. Sood's medical expertise. Accordingly, Defendant Lindorff is granted summary judgment, as well. *Greeno*, 414 F.3d at 656; *Johnson*, 433 F.3d at 1010-12.

### CONCLUSION

For the reasons set forth above, Defendants Pulley and Lindorff's Motion for Summary Judgment [41] is GRANTED. The Motion for Summary Judgment by Defendants Sood and Nelson [37] is also GRANTED. Defendant Shar Fateilglien is DISMISSED for failure to effect proper and timely service. This matter is now TERMINATED, and all pending deadlines or hearings are VACATED.

ENTERED this 5th day of March, 2015.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge

5